Mr. Chief Justice Sharkey
delivered the opinion of the court.
This case comes up by appeal from the superior court of chancery; and nothing is brought up by the appeal except an order made by the chancellor, by which he set aside his own decree previously made.
The complainant, who is the appellant, had filed his bill to foreclose certain mortgages made by the defendants to the Hernando Rail Road and Banking Company, which had been transferred by the company as security for a loan obtained from the New York Banking Company.
The defendants first demurred, and the demurrer was disallowed and time given to answer. Some of them answered, but some failed to do so, and a pro confesso was taken. The com *155 plainanls dismissed as to those who answered, and proceeded to have an account taken as to those who had failed, on which a final decree was made, confirming the report of the commissioner, and directing a sale of the mortgaged premises in default of payment.
The final decree was signed on the 9th day of July, 1847, and on the 29th day of November the court was adjourned until court in course.
On the 4th of December, 1847, two of the defendants, against whom the final decree had been rendered, presented a petition to set aside the decree and all other proceedings in the cause, subsequent to the demurrer, and insisted upon the privilege of arguing the demurrer, and of answering, if it should be overruled. The petition assigns six causes for setting aside the proceedings, being such objections to their regularity as might properly be raised on appeal. And it is to be remarked, that if the causes be true, they show nothing more than irregularities, — nothing which would render the decree a nullity.
Afterwards, to wit, on the 11th of March, 1848, being a continuance of the December term, the chancellor ordered that all the proceedings in the cause, subsequent to the overruling of the demurrer, be set aside, vacated, and for nothing held, and the cause opened for further proceedings, and it was this order the complainants appealed from. To this point alone will our remarks be confined, believing that nothing else is brought up by the appeal.
It is contended that the court had not power to make the order, inasmuch as a final decree had been signed, and the term of the court had elapsed.
Whilst a court continues in session, it may, in most cases, exercise power over its judgments and orders. But after the term-has elapsed, this power ceases; the judgments are then final, and can only be reviewed by appeal or writ of error. This is equally true as regards the final decrees of the court of chanchery which have been regularly enrolled. Indeed, by the English practice, they become final and conclusive when enrolled, and afterwards, it would seem, they could only be corrected by *156 bill of review, even if the application should be made at the same term. But certainly, after the term has passed, and the court has been closed, a final decree, which has been enrolled, cannot be opened by petition. The party must appeal, or resort to a bill of review. 3 Dan. Ch. Pr. 1640; Mitf. Plead. 90, 237; 1 Bland, Ch. 120; 3 Wheat. 593; 2 Johns. Ch. R. 205; 2 Hill, Ch. R. 156.
This being the law, the inquiry is, Was the decree in this case final by having been duly enrolled, and by the expiration of the term? According to the practice, the decree is usually drawn out by counsel and submitted to the chancellor for his signature. When it is signed and placed upon the records of the court, it is then to be considered as enrolled. This decree seems to have been complete in that respect.
Ever since the establishment of the court of chancery, it has held two terms in each year, the times of holding which have been appointed by law. By some of the earlier statutes, the length of the term was prescribed, but this feature has been changed. By the act of 1842, (Hutch. Code, 778,) it is declared that the court should hold two terms in each year, to commence on the first Mondays of June and December, and continue so long as the business might require. ‘ The term was not limited as to duration, yet, when the court finally adjourned, it was at an end, and there was no mode of calling a special term; and although the business might require a continuous session throughout the whole year, still the law had provided for two terms, and one must of necessity end before the other could commence. By an act supplemental to the above mentioned act of 1842, it is provided that the court shall always be open, and that the chancellor shall hold the same at such times as business may require, on giving three weeks’ notice. This law was designed to enable the chancellor to hold special terms, but it did not change the law which provided for two terms, for that would have been a repeal, but this professes only to be a supplemental bill. Stated terms are indispensably necessary for the return of process and appearance of the parties; and if the legislature had intended to dispense with them, the act would have *157 contained further provisions. Besides, we cannot suppose that the legislature intended to leave it discretionary with the chancellor whether he would or would not hold a court, and if the regular terms be abolished, then the chancellor may or may not hold court at all.
The record in this case shows that the court was adjourned on the 29th of November, 1847, until court in course; that is, until the ensuing December term. At that adjournment the decree became final and conclusive, even if it was not so by the enrollment. It could only afterwards be changed or set aside on bill of review, or by appeal to this court. The petition to set it aside was filed on the 4th of December, and although this was but five days after the court had been . adjourned, yet it was a new term. The decrees of the previous term could not then be set aside on motion or petition. The power of the chancellor was as much concluded as though the petition had been presented five years, instead of five days, after the adjournment of the court.
The order must therefore be reversed, and the cause remanded.